[Crim. No. 7821.   Second Dist., Div. Two.   Apr. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ANDREW JACKSON, JR., Defendant and Appellant.

Richard D. Wood, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J. — Appellant was convicted of two felonies: (1) violation of section 211, Penal Code (robbery of one Melvin Goodwin) and (2) violation of section 12021, Penal Code (possession of a firearm capable of being concealed upon the person, appellant having previously been convicted of a felony). Willie Howard Johnson was also convicted of the armed robbery charge but he has not appealed. Appellant has appealed from the judgment.

On February 13, 1961, Melvin Goodwin was working as a clerk in Harold Peterson's drive-in liquor store in Paso Robles. At approximately 8 :30 p. m., when Goodwin was in the store alone, appellant and Johnson entered. Appellant was holding a gun, which he pointed directly at Goodwin.

At appellant's direction, Goodwin put all the paper money, consisting of one's, five's and ten's in a paper bag. It amounted to around one hundred dollars. Johnson picked up the paper bag and the money and walked out the front door. Appellant told Goodwin to lie down, which he did. Appellant then also left. The men were in the store only approximately three minutes. Prior to their coming in, Goodwin did not see or hear any car nor did he see any car leave the area.

After appellant and Johnson left, Goodwin called the Paso Robles Police Department. He told them that two colored men had held up the store. A patrolman came out to the store in approximately five minutes. He took down the description of the holdup men which Goodwin gave him. Ray Sturgeon, a reserve deputy sheriff and merchant patrolman, was present when Goodwin gave the descriptions to the police. He took down the descriptions as Goodwin was talking. The man carrying the gun (the appellant) was described as 5 feet 7 inches, 155 to 160 pounds, 35 to 40 years old, slender build, Negro male, wearing brown zippered jacket, dark suntan pants, possible moustache and also needed shaving. The other man was described as wearing a cap and some kind of jacket. His trousers were wash clothes, not levis. He appeared to be a little taller and heavier than appellant. The description information provided by Goodwin was given to the Sheriff's Office and to the Highway Patrol.

After receiving the description of the holdup men, Deputy

Sturgeon searched the immediate area for the suspects but did not find them. He thereupon started checking his route again. At about 10 p. m. he reached Black's Richfield Station in Paso Robles. Just before he entered the station, two colored men in a 1955 green and white Cadillac drove in. They purchased four dollars worth of gas and paid for it with four one-dollar bills. Appellant was the driver. He looked like he needed a shave. As Deputy Sturgeon reached the station, he observed the Cadillac just pulling away from the pumps with the two colored men in it. He had a conversation with the service station attendant, and then proceeded to follow the Cadillac on the freeway in order to obtain its license number. Upon obtaining the license number, Deputy Sturgeon went to the police department and turned it over to them. The license number was TAK 635. Sturgeon did not stop the Cadillac because he was by himself and not authorized to stop anyone. He did not have a radio in his car. Deputy Sturgeon told the officer at the desk the license number and let the police handle it. He believed ''it might be a suspect from the armed robbery.'' The deputy described the car as a white top, green body, Cadillac, about a '55, and occupied by two colored men.

San Luis Obispo County Deputy Sheriffs Goodman and Scarborough were on night patrol duty, patrolling the south portion of the county from San Luis Obispo to the Santa Maria River. They were in a radio patrol car. At approximately 8:40 p. m. they received the first information relative to an armed robbery in Paso Robles from a broadcast from their station in San Luis Obispo from Radio Officer Albaugh. It contained the same description of the men that Goodwin had initially given the officers and which Deputy Sturgeon had taken down. At approximately 10:17 p. m. the officers received another radio call regarding the armed robbery. This broadcast gave the description of an automobile, a 1955 Cadillac coupe D'Ville, white over green, California license TAK 635, occupied by two male Negro subjects believed to be the men involved in the armed robbery. The broadcast stated that the car was leaving Paso Robles. After receiving this call, the two officers went to the freeway and pulled off. At approximately 10:30 p. m., they observed two Negro men in a 1955 white over green Cadillac coupe D'Ville, which they followed. The license was TAK 635. The Cadillac was stopped at Pismo Beach. Appellant, who was driving, immediately got out.

Johnson was told three different times to get out before he emerged from the vehicle. He kept "slouching under the front seat as if he was pushing something or putting something [underneath]—just making a motion, reaching down." Appellant had a moustache and looked like he hadn't shaved that day. He had on a blue two-tone shirt, a little brown hat, khaki pants and black shoes. Johnson was wearing a little white leather cap, a gold three-quarter length jacket, black and grey striped sport shirt, black trousers and black shoes. When appellant and Johnson got out of the car, they were told they were under suspicion of armed robbery in Paso Robles. They were then placed under arrest and handcuffed. When Johnson got out of the car, he left the door open. Deputy Goodman noticed a paper bag protruding from under the seat. He reached down and picked it up. There was a loaded revolver in the bag. Search of the automobile disclosed a total of $97 in one's, five's and ten's. Some of these bills were found in the glove compartment, while others were folded up in the front ashtray on the dash. At the trial, the victim, Melvin Goodwin, believed the gun found in the bag on the floor of the car looked very much like the one used by appellant in the robbery. It was about the same size and definitely was the same color. Appellant, accompanied by Johnson, had purchased this gun in Bakersfield on November 19, 1960. Goodwin identified appellant and Johnson as the persons who had robbed him.

Appellant testified that he had not been north of San Luis Obispo on the night in question, and that later in the evening he had picked up Johnson south of San Luis Obispo. He admitted the ownership of the Cadillac but denied any knowledge of the gun that was found in his car. He indicated that he did not know that there was any money in the automobile until he was so informed by the police. He suggested that probably it was put there by his wife. His wife took the stand and testified that she hid the money in the car prior to the incident on February 13. Appellant also testified that he observed nothing on the floor of the automobile at the time he entered, prior to being arrested at Pismo Beach.

In seeking reversal, appellant contends that the trial court committed prejudicial error when, over his objection, it received in evidence the gun and money and testimony relating to their discovery. He argues that failure to produce the desk officer in Paso Robles for examination as to what made him connect the two Negroes in the Cadillac with the

robbery of the liquor store permitted "hearsay on hearsay." He further argues that the trial was unfair on the theory that the arresting officers completely relied upon statements received by them over the radio from unknown officers who did not testify. Finally he argues that the arresting officers might have had cause to be suspicious but that this did not give them reasonable cause to arrest and search him. We fail to find any merit in any of these contentions.

Appellant's contentions raise two basic questions: (1) Was the information furnished the officers trustworthy; and (2) did the officers have reasonable cause to arrest the two men in the Cadillac and search the car?

There is no suggestion that the information furnished the police by Goodwin, the victim, with respect to the fact that he was held up, the manner in which it was accomplished, the approximate amount of money that was taken, and the description of the culprits, was not reliable. Furthermore, Goodwin testified at the trial and was therefore available for cross-examination as to the authenticity of the information he provided the officers. Thus, as the informer in this case, Goodwin was not only identified but appellant had full opportunity to interrogate him with respect to any phase of his report to the police. These facts clearly distinguish the case at bench from *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689], on which appellant relies, for in the latter case an unidentified informer furnished certain information to a police officer who relayed it to his subordinates who made the arrest. The officer had passed away at the time of the trial and so could not testify to the fact that he had received the information which he had transmitted to the arresting officers from a reliable informer. The fact that Goodwin was the informer, testified at the trial and was thoroughly cross-examined, dissipates the concern expressed in the concurring opinion in the *Harvey* case as to the "possibilities of the phantom informer. . . ."

Appellant contends that the connection between the perpetrators of the robbery and the occupants of the Cadillac must have been made by the desk officer in Paso Robles and that he should therefore have been called to testify as to why he felt these men were the persons involved. However, it is apparent that the "connection" between the robbery and the occupants of the Cadillac was not necessarily made by the desk officer. On the contrary, the connection appears to have been made by Officer Sturgeon, who testified. He was

present at the police station when the victim called; he was at the scene of the crime when the victim first gave the descriptions of the culprits to the police; he wrote down the descriptions and then started to search for the suspects; he was one of the investigating officers. When he drove into the Richfield station, he saw the Cadillac with two colored men in it, just pulling away from the pumps. He had a conversation with the station attendant, which led him to follow the Cadillac. The officer followed the car and got the license number. Having no radio, and only limited authority, he went to the Police Department and gave the desk officer a description of the car and the license number and the fact two colored men were in it. He stated: "It might be a suspect from the armed robbery." In view of Officer Sturgeon's having been present when the victim described the robbers, took down the description and proceeded to search for the suspects, and having observed colored men in the Cadillac when it pulled away from the service station, and having talked to the service station attendant, and as a result, pursued the car and obtained its license number, and having then gone to the police department with this information, it is a reasonable inference in the light of Officer Sturgeon's statement to the desk officer that he (Sturgeon) made the "connection" between the robbery and the men in the Cadillac, and that the desk officer reasonably so interpreted Officer Sturgeon's comment. Thus, the broadcast that the desk officer immediately put out giving the color and license number of the car was simply a transmission of official information and appraisal in normal and routine fashion.

As pointed out by this court in *People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856]: "The fact that the information did not come from the informant directly to the officer who made the arrest does not prevent reliance on its trustworthiness since it reached him through official channels." It was therefore not necessary to produce the desk officer at the trial. He simply performed a routine official act.

The description of the automobile was sufficiently accurate to enable the officers to identify it and, taken in connection with the earlier broadcast relative to the armed robbery, gave the officers reasonable cause to stop it. Then taking into account the earlier description of the robbers which had been broadcast, the later broadcast which identified the car, and the furtive acts on the part of Johnson when he was asked to get out of the car, amply justify the officers in arrest-

ing the occupants. The arrest was therefore legal. It follows that the officers were warranted in searching the car, which resulted in their finding the gun and paper money hidden in the glove compartment and the ashtray on the dash. Since the search was legal, the evidence thus obtained was admissible.

We find no error in the record.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied May 4, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1962.