[Civ. No. 27362.  Second Dist., Div. Three.  Dec. 17, 1964.]

GREVILLE MERCURIUS, Plaintiff and Appellant, v. R. M. ROLON et al., Defendants and Respondents.

Hugh R. Manes for Plaintiff and Appellant.

Roger Arnebergh, City Attorney (Los Angeles), Victor P. Spero and William B. Burge, Deputy City Attorneys, for Defendants and Respondents.

SHINN, P. J.—The action is for damages for false imprisonment and alleged assault and battery. At the close of the evidence in a jury trial the court granted a motion for nonsuit upon the cause of action for false imprisonment. The cause of action for assault and battery was submitted to the jury, which failed to agree. The appeal is from the judgment of nonsuit.

Plaintiff was taken into custody by defendant police officers, Rolon and Logan, as a burglary-rape suspect and was detained about 30 minutes at a police station. He was not booked, fingerprinted or photographed, nor was any permanent record made of his detention.

The question on appeal is whether, as a matter of law, defendants had probable cause for the arrest. This depends upon whether probable cause was shown by evidence which was not in substantial conflict. (*White* v. *Martin*, 215 Cal.App.2d 641 [30 Cal.Rptr. 367].) There was evidence of the following facts: The defendants were police officers of the City of Los Angeles on the occasion in question, assigned to University Division of the Los Angeles Police Department and were on special assignment as such police officers to apprehend a burglary-rape suspect.

As a standard procedure for several months prior to plaintiff's apprehension the defendants had attended regular rollcall sessions where they received information as to crimes committed within the City of Los Angeles. Also as a standard procedure there was a pin map depicting the various crimes and their locations within the area covered by defendants' division of the Los Angeles Police Department. Attached to the pin map were the crime reports relating the crimes depicted on the pin map. Each of these defendants attended the rollcall training, read the crime reports and familiarized him-

self with the crimes and their location. For a period of several months prior to November 29, 1959 (the date of plaintiff's arrest), the defendants had information and knowledge that many burglaries and rapes had occurred within a very small area of their division, specifically within a 5-block circle of Ellendale where plaintiff was apprehended. The defendants were informed that the burglary-rape suspect would go out and look over the houses to select his victims, and that most of the burglaries and rapes occurred in the early morning hours, shortly before dawn. In September of 1959 a rape-type murder was committed within 2 or 3 blocks from where plaintiff was apprehended, which defendant Rolon believed might have been committed by this burglary-rape suspect. The general description of the burglary-rape suspect was that he was a male Negro, with short hair, about 6 feet tall, weighing between 165 and 210 pounds, very muscular and strong, with large hands, and anywhere from the middle twenties up to the thirties in age. There was a clipboard at the University Station where these defendants worked which contained just the crime reports attributed to this burglary-rape suspect and the problem of apprehending this burglary-rape suspect was so acute the Los Angeles Police Department Metropolitan Squad was brought into the area to help catch this burglary-rape suspect.

The burglary-rape suspect had been seen by three or four officers including the defendants on prior occasions and was known to be a male Negro, a good 6 feet in height, weighing anywhere from 175 to 190 pounds.

At the rollcall session attended by defendants on the evening in question, defendants were informed by the Analytical Section of the Los Angeles Police Department that they felt the burglary-rape suspect would attack on the very Sunday morning plaintiff was apprehended, and the information described the burglary-rape suspect as a "male Negro, thirty, about six feet, two hundred pounds, short hair, and they stressed 'very muscular and athletic.'"

It was a Sunday morning and approximately 6:50 a.m., when the officers first observed plaintiff, a male Negro, seated in a parked vehicle, which was significant to the officers because the burglary-rape suspect they were seeking had been heard to drive away in a motor vehicle.

The location of plaintiff in this parked vehicle was in the immediate vicinity where the burglary-rape suspect had been operating and was within 2 or 2½ blocks of where this sus-

pect had attacked the morning before. Defendant Rolon approached plaintiff and observed him seated with his hands in his lap and his pants open. Defendants observed plaintiff's hands and in their opinion they were large. It was the consensus that the burglary-rape suspect had large hands.

The fact that the plaintiff was wearing a jacket was significant to defendants because the jacket worn by plaintiff was similar to a jacket described as having been worn by the rapist; in fact, it had the same knit cuffs and wool-type fabric as the jacket which had been described as having been worn by the felon defendants were seeking. Defendants formed an opinion that appellant was approximately 6 feet tall, that he weighed between 190 and 200 pounds and was strong, and had short hair.

In significant particulars plaintiff answered the description of the vicious criminal who was at large and likely to be in the neighborhood.

Plaintiff testified that on the date of his arrest he was 35 years old, 6 feet, 2½ inches tall, and weighed about 185 pounds. He further testified that he is a male Negro, and that on the occasion in question he was wearing a jacket. Although plaintiff declined to admit he was muscular and athletic, he did admit that he had engaged in track and field sports and had done some boxing, and engaged in weight lifting.

Plaintiff denied that the fly of his trousers was open while he was seated in the car but upon cross-examination admitted that the fly of his trousers was half open after he got into the police vehicle. This was all the testimony bearing upon the issue of probable cause.

Probable cause for the arrest existed if the facts known to and observed by the officers would have led a man of ordinary care and prudence to believe and entertain an honest and strong suspicion that the person arrested was guilty. The test is not whether the evidence would support a conviction but only whether it supports a strong suspicion. (*People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896].)

Plaintiff contends that the evidence was in conflict in material respects which should have been resolved by the jury. He says he speaks with a foreign accent and that the perpetrator of the earlier crimes was not described as having an accent, and he says there was a conflict in the evidence as to whether it was still light, as to when the zipper of his trousers was seen to be open and how far it was open, and that there was a conflict in the evidence as to the extent of

force that was used to make the arrest. These were matters of slight consequence as compared with the undisputed facts above related which convinced the officers that they had found the man they were looking for. It is trite to say that where the question is one of identity each case must be determined upon its own proven facts but there is no more appropriate occasion for saying so than in the consideration of the circumstances of an arrest.

The facts known to the officers pointed toward plaintiff as the man who had committed the felonies. The descriptions they had been given were not vague nor were they of a man of average size and appearance. It was the duty of the officers to locate and identify a man fitting the description; they were not looking at large but in the very vicinity in which the previous crimes had been committed, and the time was early morning when those crimes had been committed.

We find nothing in the evidence which, in our opinion, would have caused a person of ordinary prudence and caution, situated as the defendants were, to entertain a serious doubt that plaintiff was the man who had perpetrated the earlier crimes.

We are of the opinion that probable cause for the arrest was established by uncontradicted evidence. If the depraved and vicious criminal whom the police were hunting is ever to be apprehended from the descriptions given by his victims and others, it will be by officers who use the initiative, discretion and judgment exercised by the defendants.

It was not error to grant the nonsuit. The judgment is affirmed.

Ford, J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied December 31, 1964, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1965. Peters, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.