[Crim. No. 5602. First Dist., Div. One. July 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MARVIN EUGENE GARDNER, Defendant and Appellant.

Lawrence V. Brown, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—This is an appeal by defendant from a judgment of conviction for two counts of armed robbery. We have concluded that there is no merit to his sole contention that certain evidence was inadmissible on the basis that it was obtained as a result of an illegal search and seizure.

The pertinent factual background of the instant case is as follows: Michael O'Neal testified that on September 13, 1965 he was employed at the Regal Gas Station at Third and Thomas Streets in San Francisco; that at 11:40 p.m., while he

was in the station office checking his receipts, a Negro man wearing a mustache and dressed in an Army green uniform with a green cap appeared at his side and asked for a package of Camel cigarettes; that O'Neal initially replied that the station was closed; but that when O'Neal noticed the butt of a gun in the man's pocket, O'Neal told the man that he would see about obtaining the cigarettes; that the man then asked O'Neal whether O'Neal had noticed the weapon, O'Neal replying that he had; that the man then told O'Neal to hand over all the big bills; that O'Neal complied with this order, giving the man $161 in currency; that the man then left, warning O'Neal not to follow; and that O'Neal then reported the incident to the police.

John Bell testified that on September 14, 1965 he was employed at the Regal Gas Station at Third and Galvez Street in San Francisco; that at approximately 1:40 a.m. a man wearing an Army field jacket, green Army field hat, glasses, and a trimmed mustache approached him at the station and asked him for a package of Camel cigarettes; that Bell entered the office to get the cigarettes for the man; that the man then told Bell to open the cash register; that Bell did not comply initially, but when he saw the butt of a pistol in the man's right pocket, he opened the drawer and gave the man $25 or $26; that when the man received this money he asked Bell whether there was any more, Bell replying that that was all the money there was; that the man then asked for a carton of Camels and of Pall Malls, which Bell gave him; and that the man then left, telling Bell not to follow him. Bell further testified that after the man had left the gas station Bell got into his car and drove around the block; that he saw a man dressed with the same clothing as the person who had robbed him parked in a yellow Chevrolet with a green top; that the man started the car and drove away; that Bell followed him for several blocks where he was able to get a closer look at the car and to copy down the license number as CSW 711; that Bell then contacted a police patrol car and reported the incident to the police.

Officer Garrett Griffin of the San Francisco Police Department testified that at approximately 1:50 a.m. on September 14, 1965, while he and his partner were on duty in the vicinity of Third and Galvez Streets, they received a call on their radio that a robbery had just been committed in that neighborhood; that the suspect was described as a Negro male, 40 to 45 years old, wearing fatigue clothing, a hat and glasses,

and carrying a gun; that according to this report the suspect had escaped in a 1953 yellow Chevrolet bearing the license CSW 711; that a few minutes after receiving this radio report and while driving towards the freeway, Griffin and his partner observed a yellow Chevrolet with a green top bearing the license CSW 711; that the officers stopped the vehicle and upon observing that the driver was a male Negro wearing fatigue clothes, Griffin and his partner approached the car and brought defendant, the driver, out at gunpoint; that a search of defendant's car revealed a loaded gun on the floor below the driver's seat and a carton each of Camel and Pall Mall cigarettes on the front seat next to the driver; and that a search of defendant's coat and pants revealed $161 in currency.

At the trial both Bell and O'Neal identified defendant as the person who had perpetrated the robbery to which each testified.

In making the argument that the gun and cigarette cartons which were discovered in his car and the $161 in currency which was found in his pocket were the product of an illegal search and seizure, defendant takes the position that the officers lacked probable cause to arrest him. This contention is premised upon the assertion that defendant's arrest took place prior to the discovery of the gun and cigarette cartons in his car, and that therefore the sole basis for his arrest consisted of the information which the officers had received via their police radio, this information consisting of a description of defendant and the vehicle which he was driving. Since the record is not clear as to whether Officer Griffin and his partner observed the gun and cigarettes in defendant's car prior to making the arrest,[1] which circumstances could have been considered by the trial court in determining whether the officers had probable cause to arrest defendant, we proceed to consider defendant's contention on the assumption that the officers arrested defendant prior to their discovery of these items.

[1]Although Griffin did not testify whether he observed the gun and the cigarettes in defendant's car before or after he had removed defendant from the car, Griffin did state that he saw the gun on the floor between defendant's feet and observed the cigarettes on the car seat next to defendant. This testimony would be subject to the inference that Griffin observed these articles before he ordered defendant to leave his car. On the other hand, defendant testified that after the officers stopped him they placed him in their parked car and that while he was sitting in the patrol car he heard the officers talking near his car and heard one of them say ''I found it.''

In *People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564], the principles applicable to an arrest without a warrant were stated as follows: "A peace officer may arrest a person without a warrant '[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, . . .' (Pen. Code, § 836.) ▮ Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citations.] ▮ The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made. [Citations.] ▮ Information obtained from others may be relied upon to show probable cause. [Citations.] ▮ Although information provided by a known informer of unproved reliability or by an anonymous informer is relevant on the issue of probable cause, an arrest ordinarily may not be based solely on such information, and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. [Citations.]" (See also *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

Further principles applicable to the concept of probable cause are as follows: ▮ "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." (*Brinegar* v. *United States,* 338 U.S. 160, 176 [93 L.Ed. 1879, 1891, 69 S.Ct. 1302]; see *People* v. *Schader,* 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665].) ▮ In determining whether there is probable cause, each case must necessarily be decided upon its own facts and circumstances, or, as stated by some of the cases, "on the total atmosphere of the case." (See *People* v. *Ingle, supra,* p. 412; *People* v. *Cedeno,* 218 Cal.App.2d 213, 220 [32 Cal.Rptr. 246]; *People* v. *Esters,* 220 Cal.App.2d 917, 920 [34 Cal.Rptr. 264]; *People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174].)

▮ In dealing with the problem of informants whose information may or may not be sufficient to create probable cause, it should be noted that a citizen who purports to be the

victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proven or tested. (See *People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-551 [58 Cal.Rptr. 707].) The rationale underlying this principle is that such person is ''more than a mere informer. He is an observer of criminal activity, who by calling the police, acts openly in aid of law enforcement.'' (*People* v. *Lewis, supra.*) Accordingly, a number of cases have held that it is reasonable for police officers to act upon the reports of such observers. (See *People* v. *Kilvington,* 104 Cal.86, 92-93 [37 P. 799, 43 Am.St. Rep. 73]; *People* v. *Griffin, supra*; *People* v. *Lewis, supra*; *People* v. *Wright,* 216 Cal.App.2d 866, 871 [31 Cal.Rptr. 432]; *People* v. *Jackson,* 202 Cal.App.2d 569, 574 [21 Cal.Rptr. 44]; *Cole* v. *Johnson,* 197 Cal.App.2d 788, 793 [17 Cal.Rptr. 664]; *Gorlack* v. *Ferrari,* 184 Cal.App. 2d 702, 709 [7 Cal.Rptr. 699]; *People* v. *Williams,* 169 Cal. App.2d 400, 402 [337 P.2d 134]; *People* v. *Vaughn,* 155 Cal. App.2d 596, 598-599 [318 P.2d 148]; and see *People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122]; *People* v. *Cooper,* 249 Cal. App.2d 479, 481-482 [57 Cal.Rptr. 588]; *People* v. *Cove,* 228 Cal.App.2d 466, 468-469 [39 Cal.Rptr. 535]; *People* v. *Paul,* 147 Cal.App.2d 609, 617 [305 P.2d 996]; *People* v. *Hupp,* 61 Cal.App.2d 447, 449-450 [143 P.2d 84].)

Adverting to the instant case in the light of the foregoing principles, it is clear that the police officers to whom Bell, the victim of the robbery, first reported the robbery were entitled to rely upon the information imparted to them by Bell. That information was to the effect that Bell had just been robbed by a Negro man who was wearing fatigue clothing and was driving a yellow Chevrolet bearing the license number CSW 711. Since that information was reliable it did not lose its reliability when it was transmitted by these officers to police communications and in turn to other police officers who heard such communications. (*People* v. *Hunt,* 250 Cal.App.2d 311, 314 [58 Cal.Rptr. 385]; *People* v. *Harvey,* 156 Cal.App.2d 516, 521 [319 P.2d 689].) It is well settled that where reliable information is originally imparted to the police, the fact that such information does not come directly from the informant to the arresting officer does not prevent the latter from relying on its trustworthiness when it reaches him through official channels. (*People* v. *Jackson, supra,* p. 574; *People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856]; *People* v. *Harvey, supra,* p. 523; *People* v. *Gorg,*

157 Cal.App.2d 515, 520 [321 P.2d 143]; see *People* v. *Cooper, supra*; *People* v. *Schader, supra*; *Mercurius* v. *Rolon*, 231 Cal. App.2d 359 [41 Cal.Rptr. 789]; *People* v. *Schellin*, 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593].)[2] Accordingly, when officer Griffin and his partner received the subject information over the police radio, they were entitled to rely upon it and to arrest the person fitting the description given by Bell and driving the automobile which was described by him and which bore the license number given by him. We are satisfied, therefore, that these officers had reasonable cause to arrest defendant and to make the reasonable incidental search of his automobile.

The case of *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal. Rptr. 18, 380 P.2d 658], relied upon by defendant, is readily distinguishable from the instant case because the circumstances which confronted the arresting officer in that case, which were held to fall short of probable cause, differ substantially from those present in the case at bench. In *Mickelson* the officer stopped the defendant's vehicle and arrested him on suspicion of robbery based upon a description which the officer had of the robber as being a tall Caucasian with dark hair wearing a red sweater. It was there held that the officer did not have probable cause to arrest the defendant since the description of the suspect was too broad, the arresting officer had no knowledge that the suspect had an automobile, and when arrested the defendant was driving toward the scene of the robbery rather than away from it. In the present case the arresting officers had precise and specific information that a robbery had been committed, a description and license number of the automobile the robbery suspect was driving, and a detailed description of the robber. This information was completely corroborated by the circumstances observed by the officers when they stopped defendant's vehicle which, unlike the situation in *Mickelson*, was being driven away from the scene of the crime and along a likely escape route.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

---

[2]Other cases holding that in making an arrest or search without a warrant, peace officers may rely on information coming to them from official sources are: *People* v. *Webb*, 66 Cal.2d 107, 111-112 [56 Cal.Rptr. 902, 424 P.2d 342]; *People* v. *Kraps*, 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89]; *People* v. *Estrada*, 234 Cal.App.2d 136, 152 [44 Cal.Rptr. 165, 11 A.L.R. 3d 1307]; *People* v. *Davis*, 205 Cal.App.2d 517, 521 [23 Cal.Rptr. 152]; *People* v. *Stewart*, 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879].