[Crim. No. 14432. Second Dist., Div. Four. Aug. 26, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN WALTER ROSS, Defendant and Respondent.

196

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Armstrong & Wilbur and Robert W. Armstrong for Defendant and Respondent.

COLLINS, J. pro tem.*—The People appeal from an order which granted a motion, under Penal Code, section 995, to set aside a criminal information which charged defendant with possession of marijuana in violation of Health and Safety Code, section 11530. The trial court concluded that an unlawful search and seizure was established by the following facts as reported in the transcript of proceedings at the preliminary hearing.

On the evening of July 4, 1967, two police officers of the City of South Gate were in the vicinity of a park located in a residential area of the city, where an Independence Day celebration with fireworks display was in progress at about 9 p.m. The park was dark except for street and park lights. The officers were approached by one Bruce Witt, a Los Angeles County Deputy Sheriff, who established his official status (by showing his identification and badge) and informed them that a group of people in the park were sitting on a blanket and passing around a large pipe and taking turns smoking it, and he thought they were probably smoking marijuana. The officers

*Assigned by the Chairman of the Judicial Council.

approached the group. They observed the defendant seated with his legs crossed and a large brass pipe was between his legs. The testifying officer, Saxin, picked up the pipe, looked in the bowl and observed that it had just been lit; it was partially burning and contained seeds and green leafy material which appeared to be marijuana. The officer (Saxin) gave testimony as to his qualifications as an expert in identifying narcotics, including marijuana. Following the identification of the material, the officer placed defendant under arrest, and advised him of his constitutional rights. Then the officer searched defendant and found a bag containing marijuana in his right hip pocket. Defendant's attorney stipulated for purposes of the preliminary hearing that the bag found on defendant's person contained marijuana.

The People (appellant) argue, that on the basis of Deputy Sheriff Witt's information to the South Gate officers, there was probable cause for arresting and searching all members of the group who had access to and used the pipe (citing *Rideout* v. *Superior Court*, 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197]); that the fact that officers acted more cautiously and arrested only the defendant, the one person who appeared to have the pipe, should not have any bearing on the propriety of the search which followed.

On the other hand, defendant (respondent) contends that the failure of the People to produce Deputy Sheriff Witt as a witness at the preliminary hearing was fatal to the prosecution's case, the argument being that the record contains no evidence as to Witt's familiarity with marijuana or his ability to identify it and furnish the South Gate officers with any reliable information to support his belief that it was being smoked at the time he saw the pipe being passed among members of the group.

In short, defendant argues that Deputy Sheriff Witt was not a "reliable informant" within the teaching of earlier California decisions.

*People* v. *Dewson*, 150 Cal.App.2d 119, cited by defendants, says (p. 128 [310 P.2d 162]): "A reliable informant apparently means a person whose information has in the past led the police to valid suspects. [Citation]"

*People* v. *Amos*, 181 Cal.App.2d 506, also cited by defendant, says (pp. 508-509 [5 Cal.Rptr. 451]): "Since Oldrow had not previously furnished information to the police, he could not be considered a reliable informant. (See *People* v. *Dewson*, 150 Cal.App.2d 119, 128 [310 P.2d 162].)". . . .

"Our decisions are uniform in holding that information furnished by a person whose reliability has not been established does not alone establish reasonable cause for the arrest or search of the suspect. . . ."

Both *Dewson* and *Amos, supra,* cite *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36], as a controlling precedent. In the *Willson* case the court actually held that there was reasonable cause for the arrest and for the search which followed because the defendant was apprehended while in the act of committing the offense of horse-race bookmaking and recording a bet on a horse race. (Pen. Code, § 337a, subds. 2, 4.)[1] However, in the course of the opinion the court speculated as to what the result might have been had the officers acted only on information furnished by an informer. We quote from the *Willson* case to show that apart from some dicta therein, the case has been cited and quoted out of context. The court's remarks were as follows (p. 294) : "In *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535], we held that 'reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt.' Accordingly, the question presented is whether the information given by the unidentified man to the chief of police and passed on to Officer Sunday was sufficient in the light of the other evidence to consistute reasonable cause to believe that defendant was guilty of a felony. Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency (see *People* v. *Kilvington,* 104 Cal. 86, 92-93 [37 P. 799, 43 Am.St.Rep. 73]), an arrest may not be based solely on such information. [Citing cases], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. (See *People* v. *Boyles, supra,* 45 Cal. 2d 652, 656 [290 P.2d 535].) In some cases the identity of, or past experience with, the informer may provide such evidence [citation], [footnote omitted] and in others it may be supplied by similar information from other sources or by the personal observations of the police. In the present case the identity of the informer was unknown, the San Diego police had had no previous experience with him indicating that his

[1]In *Willson* the arrestee unsuccessfully petitioned for a writ of prohibition to restrain the superior court from prosecuting her, contending that the record of the preliminary hearing showed no reasonable or probable cause for her commitment.

information was reliable, . . . We must consider, therefore, whether the evidence observed by Officer Sunday in the bar before the search was sufficient to justify her reliance on the information that she had received.

"Petitioner was found in the bar near the telephone where the informer had stated she would generally be. Since such innocent conduct could be known, however, to anyone who frequented the bar, it is doubtful whether its verification alone would justify reasonable reliance on the additional information charging petitioner with bookmaking. In addition, however, Officer Sunday observed petitioner standing by a scratch pad and a pencil with slips of paper in her hand. . . . Moreover, when Officer Sunday asked to see what was in petitioner's hand, she attempted to conceal and dispose of it. Although petitioner's conduct observed by Officer Sunday in the bar would not of itself constitute reasonable cause to believe she was committing a felony, *it was sufficient to justify Officer Sunday's reliance on the information given her of petitioner's bookmaking*. Under these circumstances the evidence before the magistrate was sufficient to justify the conclusion that a violation of Penal Code, section 337a, had been committed, that Officer Sunday had reasonable cause before the search and seizure to believe that petitioner was guilty thereof, and that therefore the search, seizure, and arrest were lawful. [Citations.]'' (Italics supplied.)

Quite independently of the distinguishments made in *Willson, supra,* we find ourselves unable to accept at face value the principle stated in *Dewson, supra,* (150 Cal.App.2d 119 at p. 128) that the criterion of a reliable informant is one whose information *"has in the past led the police to valid suspects";* nor the statement in *Amos, supra,* (181 Cal.App.2d 506 at p. 508) that a person is not to be regarded as a reliable informant who *"had not previously furnished information to the police. . . ."* (Italics supplied.) Since there must always be a first time for an informant to pass along information, are we to conclude that, however reputable and reliable the informant, his information cannot be legally relied upon *the first time* but only on some later occasion when he has earned the confidence of the police officers? Also, what is the result if he is never an informant on a second occasion? The unrealistic answers which the quoted passages would require demonstrate to us the unsoundness of the rule for which defendant here contends.

A distinguishing and significant fact of the present

case, namely, that the informant Witt was himself a law enforcement officer, to-wit, a deputy sheriff of Los Angeles County, cannot be ignored. We strongly doubt that the courts in *Willson, Dewson,* or *Amos, supra,* intended that the criteria of a ''reliable informant'' which we have quoted should be applied to a law enforcement officer, and we are disinclined to apply such a rule in this case. Defendant would put at naught Officer Witt's alert to the South Gate police officers much as the hapless Trojans of old ignored the pertinent warning of Laocoon to beware of the wooden horse. However, unlike Laocoon, whose warnings were made largely on the basis of his distrust of the ancient Greeks, even when they were ostensibly bearing gifts, Witt was acting on a basis more substantial than suspicion, namely, on his visual observation of the goings-on in the park.

While we cannot argue Witt's reliability on the basis that later events confirmed his belief (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528]), certainly we are entitled to conclude that he was a discerning witness when he observed several persons successively inhaling from an unusual type of pipe,— a small brass-metal item commonly used only by inhalers of marijuana, opium and other drugs. He would have been very naive indeed to draw the conclusion that the group of young men and women sitting in a semi-darkened park late in the evening were mere participants in a communal tobacco-smoking session. Pertinent here are the observations of the court in *Rideout* v. *Superior Court, supra,* 67 Cal.2d 471. There the arresting officer observed on the floor of the automobile a matchbox folded in a circular manner. He recognized it to be a ''crutch,'' i.e., a device which holds the used end of a marijuana cigarette. While there were no burn marks on the ''crutch'' the officer presumed it had been used because match boxes ordinarily are not folded in that manner. Also, in plain view at another location in the car was a cigarette package which appeared to contain marijuana. In rejecting the petitioners' contention that the committing magistrate could not reasonably have inferred that petitioners had possession of marijuana and knowledge of its presence, the Supreme Court said (67 Cal.2d at p. 475) : ''. . . an inference of their knowledge of the narcotic character of the marijuana is warranted by the evidence of the presence of the 'crutch' on the floor in front of the back seat where petitioners were sitting. . . .''

Certainly there is a parallel in this case where the officers

observed a group of young people passing a smoking pipe from one to another after each had inhaled from it,—a practice which law enforcement officers recognize as quite common among those who inhale drugs by smoking.[2]

Pertinent here are the observations of this court in *People v. Lewis*, 240 Cal.App.2d 546 [49 Cal.Rptr. 579]. There a private citizen (Owens) observed a burglary in progress and telephoned the police. Later on as he was talking to the officer who responded to his call, he saw the defendant walking along the street some distance away, and told the officer, "That's him. I can tell the way he is walking." The officer stopped defendant and after a few questions as to where he had been and where he was going placed him under arrest for suspicion of burglary. At trial the informant's testimony as to identification was less positive than his earlier statement to the officer, but he insisted he did recognize defendant by his build, walk and mannerisms. On appeal defendant argued that these facts established a lack of probable cause for arrest and the incriminating evidence which the ensuing search produced.

In rejecting defendant's contentions the court said (240 Cal.App.2d at pp. 549-550): "Officer Bryant knew from his own observation that someone had just broken into the cleaning establishment, setting off the burglar alarm. He knew someone had telephoned the police to report a burglary in progress. A citizen emerging from the house across the street had given him an eyewitness description of the crime, as seen from the window of the house, and this purported eyewitness had positively identified a man on the street nearby as the burglar. When Officer Bryant questioned the accused, he received answers which were nonincriminating, but which were not persuasive of innocence. The suspect might well have been walking home from his sister's house, as he had asserted, and committed the burglary seen by Mr. Owens. The officer had no reliable way of determining this matter as he stood on the street corner. His immediate alternatives were to make an arrest or to allow the accused man to go his way, perhaps never to be found again. If the law allowed Officer Bryant to place any credence whatever in Mr. Owens' statements, it was his duty to make the arrest.

---

[2]Judicial notice may be taken that certain articles innocuous in themselves are part of the paraphernalia of narcotic users. (See *People* v. *Torres*, 56 Cal.2d 864, 866-867 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Nailor*, 240 Cal.App.2d 489 [49 Cal.Rptr. 616].)

"In bookmaking and narcotics cases the courts have developed the concept of the 'reliable informant,' which, in that context means a person who has previously given the police information which has been found to be true. By that standard a known criminal, a drug addict, or even an anonymous voice on the telephone may become a 'reliable informant,' upon whose word the police may make warrantless arrests, break in doors and conduct searches. (See, e.g., *People* v. *Prewitt*, 52 Cal.2d 330 [341 P.2d 1].)

"But experienced stool pigeons are not the only sources of credible information, and the tests of reliability which must be applied to such persons are not necessarily applicable to every citizen who assists the police.

"Bookmaking and narcotics offenses are crimes which are usually committed in the presence only of the criminals themselves, where there is no innocent victim to complain. The persons most likely to furnish information are themselves criminally involved or disposed, and their reports to the police are generally motivated by something other than good citizenship. Such an informer rarely offers himself as a witness to crimes already committed. His usual function is to supply a tip in confidence whereby the police may witness a crime or uncover evidence of it for themselves. A citizen such as Mr. Owens, who reports a crime committed in his presence, is more than a mere informer. He is an observer of criminal activity who, by calling the police, acts openly in aid of law enforcement.

"Courts have not hesitated to find it reasonable for police officers to act upon the reports of such observers."

The court cited numerous earlier decisions in support of his views, to wit: *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73]; *People* v. *Wright,* 216 Cal.App.2d 866 [31 Cal.Rptr. 432]; *Cole* v. *Johnson,* 197 Cal.App.2d 788 [17 Cal. Rptr. 664]; *People* v. *Williams,* 169 Cal.App.2d 400 [337 P.2d 134]; *People* v. *Vaughn,* 155 Cal.App.2d 596 [318 P.2d 148]. To these we add the more recent decisions of the court in *People* v. *Guidry* (1968) 262 Cal.App.2d 495 [68 Cal.Rptr. 794]. Also see *People* v. *Talley* (1967) 65 Cal.2d 830 at page 836 [56 Cal.Rptr. 492, 423 P.2d 564].

Relevant also is the case of *People* v. *Jackson,* 202 Cal.App. 2d 569 [21 Cal.Rptr. 44]. There one Sturgeon, a reserve deputy sheriff and merchant patrolman, furnished the Paso Robles Police Department with information as to the make, model and license number of an automobile used by two per-

sons who fit the description furnished by a robbery victim. Later the suspects were apprehended by deputy sheriffs of another county who received the descriptive information via radio while patrolling in a radio-equipped car.

On appeal from his conviction defendant Jackson contended that there was no admissible evidence linking him with the crime because the desk officer of the Paso Robles Police Department was not produced as a witness for examination as to what made him connect defendant with the robbery, and the testimony of other witnesses was "hearsay on hearsay." The court pointed out that the "connection" between the robbery and the car occupied by defendant was not necessarily made by the desk officer, but on the contrary the connection appeared to have been made by the private patrolman, Sturgeon. The court said (202 Cal.App.2d at p. 574) : "As pointed out by this court in *People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856] : 'The fact that the information did not come from the informant directly to the officer who made the arrest does not prevent reliance on its trustworthiness since it reached him through official channels.' It was therefore not necessary to produce the desk officer at the trial. He simply performed a routine official act."

We deem the analogy between private patrolman Sturgeon and Deputy Sheriff Witt sufficiently close to justify the conclusion that Witt was a "reliable informant" whose information justified a search without warrant as it did in the *Jackson* case, *supra*. Moreover, the information on which the South Gate officers acted in the instant case came directly to them from Officer Witt and was not subject to any "hearsay on hearsay" objection. As stated in *People* v. *Lewis, supra,* 240 Cal.App.2d at page 550, one "who reports a crime committed in his presence is more than a mere informer."

Actually there exists here an alternative basis to support probable cause for arrest. The South Gate police officer himself saw the pipe in plain view. It has been held that such "plain sight" observation of articles capable of being used as narcotic paraphernalia does not constitute a search. (*People* v. *Davis,* 240 Cal.App.2d 496 at p. 500 [49 Cal.Rptr. 663].)

We conclude that probable cause for arrest was shown, that the search which followed was proper and lawful and that the motion should have been denied.

The order is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.