[No. 2,912.]

# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* M. H. WALSH.

IMPLIED BIAS.—A challenge for implied bias must specify the particular cause from which the bias is to be inferred.

CONSTRUCTION OF STATUTE—JUSTIFIABLE KILLING.—Under the provisions of section twenty-nine of the Act concerning crimes and punishments, the killing of another is justifiable only when the entry into a habitation is being made in a violent, riotous, or tumultuous manner, for the purpose of offering violence to some person therein, or for the purpose of committing a felony by violence.

REASONABLE OPPORTUNITY OF REMOVING INTRUDER.—W., who was a clerk of a hotel, saw A. in the act of entering at a window in the night-time, and fired at him, without first calling to him to desist or inquiring as to his purpose. *Held:* that there being no circumstances calculated to arouse the fears of a reasonable man or indicating a danger so urgent or pressing as to excuse the instant use of a deadly weapon, it was not error to refuse to instruct the jury to the effect that if W. did not have a reasonable opportunity of removing A. then he was justified in shooting him.

ERRORS AS TO ABSTRACT PRINCIPLES OF LAW. — The Supreme Court will not consider alleged errors upon merely abstract propositions of law, in giving instructions in a criminal case, but will merely review misdirection or refusal to give proper instructions upon points actually arising in the case.

APPEAL from the District Court of the Thirteenth Judicial District, County of Merced.

The facts are stated in the opinion.

*G. W. Tyler,* for Appellant.

*Attorney General Love* and *Alexander Campbell,* for Respondent.

By the Court, WALLACE, C. J.:

The prisoner was convicted of the crime of manslaughter, in killing one Atwill, and from the judgment and an order denying him a new trial he has prosecuted this appeal:

1. The challenge interposed to the juror Fowler " for im-

plied bias," specifying nothing, was properly denied. (*People*
v. *Reynolds*, 16 Cal. 130; *People* v. *Renfrow*, 41 Cal. 37.)

2. It is insisted that the Court erred in its charge to the
jury, and in the refusal to give to the jury certain instruc-
tions asked for by the prisoner, and refused by the Court.

The shooting was not denied, but was claimed by the
prisoner to have been excusable under the circumstances.
The prisoner was the clerk in charge at Coulter's Hotel, in
Snelling, at which hotel the deceased was a boarder, but not
a lodger, and about two o'clock in the morning saw a man,
who proved to be the deceased, seemingly in the act of
getting into or out of a window of one of the rooms on the
ground floor of the hotel. The man appeared to be balanced
upon the sill of the window, with his feet hanging out; and
the prisoner seems to have fired at him from another win-
dow of the same hotel. The ball entered the upper portion
of the left thigh of the deceased, lodging in the right leg,
between the knee and ankle. Tetanus subsequently set in,
causing death in a few days. The evidence for the prisoner,
he having been sworn upon his own behalf, was to the effect
that, hearing a noise about two o'clock in the morning, seem-
ingly a striking against the sash of a window, he jumped
up—had a revolver in his hand—and seeing by a faint moon-
light the legs of a man hanging out of the window of the
room occupied by the children of Mr. Strong, the proprietor
of the hotel, he fired, without knowing who the person in
the window was, and without warning him, or inquiring of
his business there. Upon the other hand, the evidence upon
the part of the prosecution tended to show that the prisoner
was not ignorant of who the deceased was when he fired at
him; that he knew well that it was Atwill in the window;
that in the room into which the window opened was a
woman, in charge of the children of Strong, the landlord,
and that for the favors of this woman the deceased and the
prisoner were rivals; that the deceased, as he expressed it

in. his dying declaration, put in evidence, had "got the inside track of Walsh," and had persuaded the woman to discard the latter altogether, and to swear fidelity to himself. The deceased was on a visit, or rather retiring from a visit to the woman when he was shot. He had gone into the room at about twelve o'clock at night, and after remaining with her some two hours, was crawling out through the window, feet foremost—detained for a moment in regaining his hat, which had been knocked off by the window curtain—when Walsh shot him in the legs. The theory of the prosecution, in short, was that the shooting was malicious, and was prompted by feelings of jealousy and revenge upon the part of the prisoner towards the deceased.

The Court refused to instruct the jury that if they believed "that the defendant, having charge of the house, had reason to believe that the person trying to enter the house by the window, at the midnight hour, did so for the purpose of committing a felony or other unlawful act, then the jury will acquit." It is clear that the instruction, as thus asked, is not the law. The phrase *unlawful act*, as contained in the instructions asked, goes beyond the provisions of section twenty-nine of the Act concerning crimes and punishments, with reference to which the instruction was apparently drawn. Under the provisions of that section the killing would be justified only when the entry into a habitation is being made in a violent, riotous, or tumultuous manner, for the purpose of assaulting or offering violence to some person dwelling or being therein, or for the purpose of committing a felony by violence or injury. The statute also provides that a bare fear of any of these offenses is not sufficient to justify the killing, but that it must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the in-

fluence of those fears, etc. (Section 30.), The instruction as asked omits to present to the jury the question as to whether or not Walsh did believe that the entry was being made for the purpose of committing a felony, and really acted under any fear that such an offense was about to be committed when he fired the shot. At the request of the prisoner, the Court gave to the jury the eighth instruction, which is an exact copy of sections twenty-nine and thirty of the statute, and correctly set before them the rule by which their determination upon the point should be controlled; and in view of this instruction it can hardly be said, as claimed by the prisoner's counsel, that "the charges, taken as a whole, exclude the idea that the defendant could act upon appearances in shooting deceased, but that there must have been actual, real danger," as distinguished from mere apparent danger, sufficient to excite the fears of a reasonable person.

At the instance of the prisoner the Court instructed the jury as follows: "A man is not authorized to fire a pistol on every intrusion or invasion of his house. He ought, if he has a reasonable opportunity, to endeavor to remove the intruder without having recourse to the last extremity; but the making an attack upon a dwelling, and especially at night, the law regards as equivalent to an assault upon a man's person, for a man's house is his castle." There was no error in refusing an instruction subsequently asked, to the effect that if the prisoner did not have a reasonable opportunity of removing the deceased, then he was justified in shooting him, and should be acquitted. "A reasonable opportunity" is too vague an expression in this connection; besides, the facts appearing at the trial did not warrant the instruction as asked. The shot was fired without calling to the deceased to desist, or inquiring of him as to his purpose in being in the window of the hotel. There were no circumstances calculated to arouse the fears of a reasonable man,

or indicating a danger so urgent or pressing as to excuse the instant use of a deadly weapon. Walsh himself, when upon the witness stand, does not pretend that there were. He does not claim that he thought at the time that the firing was necessary to avert any danger, real or apparent—according to his own account it would seem to have been done in a spirit of recklessness. He says: "I fired without taking any aim."

We discover no error in the action of the Court in giving or refusing to give instructions to the jury upon points involved in the shooting of the deceased. We will not consider the errors, or supposed errors, of the Court below upon merely abstract propositions of law, but will only look to see that no misdirection or refusal to give proper instructions upon the points actually arising, or which, from the nature of the accusation, must have necessarily arisen in the case, has occurred.

The question as to whether or not the death of the deceased resulted from the wound inflicted upon him by the prisoner or from other causes, was fairly submitted to the jury under the instructions; and the objection to the giving in evidence of the dying declarations of the deceased was properly overruled. In fact, the record discloses no error of which the prisoner can be heard to complain, or by which his substantial rights were prejudiced at the trial.

Judgment and order denying a new trial affirmed.

Mr. Justice CROCKETT did not participate in this decision.