[Civ. No. 27708.    Second Dist., Div. Two.    Dec. 11, 1963.]

PAUL EDWARD ROLLINS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Choate & Holland and Raymond Choate for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

HERNDON, J.—Petitioner Rollins seeks a writ of prohibition to prevent the trial court from proceeding against him following the denial of his motion to set aside an information charging him with the commission of a felony. Appellant's motion was made on the ground that he had been committed without reasonable or probable cause. (Pen. Code, §§ 995, 999a.)

Counts II to VII of the information charge petitioner and several codefendants with committing the crime of burglary in various locations in the Los Angeles area on dates ranging from March 16, 1962, to February 21, 1963. Count I charges the several defendants with the crime of conspiracy to commit the crimes of burglary, receiving stolen property and forgery.

At the preliminary hearing, the People presented the testimony of numerous persons to the effect that they, or the companies by whom they were employed, had been the victims of burglaries or shopliftings. These witnesses identified various exhibits as merchandise which had been stolen from them.

The testimony of police officers was then offered which indicated that, with one exception, all these exhibits had been recovered either from the apartment occupied by codefendants Leslie and Vera Coleman in an apartment building owned by them, or at their place of business which was located in another part of the city.[1] The one exception was an exhibit consisting of approximately 200 blank money orders drawn against the Travelers Express Company which allegedly had been stolen in a burglary some 11 months earlier. These were found in a closed, but unlocked, heater closet on an exterior wall of the apartment building.

Objection was made to the introduction of these exhibits on the ground that they were obtained as the result of an illegal search and seizure. We need not determine the validity of this objection, however, for none of said exhibits was found in petitioner's actual or constructive possession; hence, they did not tend to connect petitioner with the specific burglaries alleged. The fact that petitioner occupied an apartment in the building (and various hearsay statements

[1]The case against codefendant Heise was dismissed on motion of the People after the issuance of an alternative writ by the Supreme Court. One item of stolen property was found in Heise's residence, but the prosecution concedes that in view of its dismissal it "is not involved in any way in the evidence against petitioner."

were admitted tending to indicate that he might be the manager thereof), would not be sufficient, standing alone, to constitute a sufficient basis for an inference that he was in joint possession of stolen goods located either in the apartment or business office of the owners of the building, or in a generally accessible unlocked closet on an exterior wall of the building. In addition, the fingerprint of another codefendant, who also had an apartment in the building, was found on the money orders.

The rule here applicable was recently enunciated in *People* v. *McFarland,* 58 Cal.2d 748, 755 [26 Cal.Rptr. 473, 276 P.2d 449], as follows: "Where recently stolen property is found in the *conscious possession* of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence." (Italics added.)

Here, none of the stolen property could be said to have been in petitioner's conscious possession, and he was not questioned by the police in regard to the items found in the possession of the codefendants. When asked whether or not he had ever seen the money orders before, petitioner stated that he had not. When asked whether or not he knew how they came to be in the heater cabinet, he stated that he had no idea.

Since petitioner was not shown to have been in *conscious* possession of any of the stolen items, and since his answers to the questions of the police were not shown to be false, there is no basis for an inference sufficient to hold him to answer for the burglaries charged in counts II to VII.

The only overt act alleged with respect to the conspiracy set forth in Count I which relates to petitioner is that "on or about the 5th day of April, 1962, at and in the County of Los Angeles, and in pursuance of said conspiracy; and to effect its object, the said defendant, Paul Edward Rollins, drove an automobile to Culver City." The only evidence relating to this allegation was to the effect that a codefendant, Joseph DiNardo, and two other men not involved in the instant proceeding, were arrested upon suspicion of burglary on April 5, 1962, when they were found upon the roof of Dorman's Clothing Store in Culver City. Petitioner was seen in the same area approximately six hours later driving a

car registered to a person not involved in this proceeding, while a car registered to him was parked nearby, with an empty box trailer attached to it. Petitioner was arrested at that time, but the record before us does not indicate whether any criminal charge was filed thereupon.

■ The rule applicable in the instant proceeding is clear: "Briefly stated, it is that to justify indictment or information there must be some evidence to connect the person charged with *the commission of the crime charged.* This evidence may be purely circumstantial in nature and of slight weight, but unless it affords a rational ground for assuming the possibility that the person charged is guilty, he is entitled to a writ of prohibition to prevent further proceedings against him." (Italics added.) (*Boyd* v. *Superior Court,* 113 Cal.App.2d 443, 445 [248 P.2d 106].)

■ Even if it could be asserted that petitioner's mere presence in Culver City under the circumstances indicated would be sufficient to support an inference that he was connected with the activities of DiNardo on the night in question, it still would afford no sufficient foundation for an information filed a year later charging him and five other persons with the *crime of conspiracy* to commit *burglary, receiving stolen property and forgery* "on or about the 1st day of February, 1963, and for a period of time prior thereto and for a period of time subsequent thereto, . . ."

In fairness to the prosecution it should be noted that testimony which tended to tie the conspiracy together was stricken when the witness disappeared following her direct testimony but before completion of her cross-examination. There were also various hearsay statements introduced for the limited purpose of showing probable cause for the arrest and search that might have provided reasonable cause for holding petitioner to answer, but the persons who made these statements were not called as witnesses. One witness testified that he had obtained from the woman whose testimony was stricken, certain money orders similar to those later found in the heater cabinet. He admitted forging and cashing the money orders and stated that he was told by said woman that she had obtained them from petitioner, but said that he had no personal knowledge thereof.

One cannot read the lengthy transcript of the preliminary hearing without gaining the impression that there was a great amount of evidence available to the police which either was not presented at the hearing or was not presented in a

legally acceptable manner. If such is the case, the prosecution may determine to refile in this matter (cf. Pen. Code, § 999), but such possibility cannot justify a commitment based upon the record actually before us.

At the conclusion of the preliminary hearing, the magistrate made the following statement to one of defense counsel in ruling upon motions to supress evidence and to dismiss: ''The Court certainly agrees with you on one thing, Mr. Cooney, that the constitutional rights and privileges enunciated by our higher courts do extend to individuals and have application to individuals; but, in the view of this Court—it may be only a minority view—these constitutional rights do not extend to and do not intend to protect 'gangs' or groups that by devious and secret ways or concerted action carry on their criminal activites. I think there is that delineation. Therefore, the Court will follow that view and deny your motion.''

Manifestly, a determination to hold a defendant to answer based upon such a view cannot be sustained. If individuals could be deprived of their constitutional rights because the prosecution determines to file against them in groups as ''co-conspirators,'' these rights would indeed be no more than words without substance.

Let the writ issue as prayed.

Fox, P. J., concurred.