[Crim. No. 10421. Second Dist., Div. Four. July 7, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LESLIE COLEMAN et al., Defendants and Appellants.

Sam Houston Allen for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a trial which began before a jury and ended as a trial by the court, appellants Leslie and Vera Coleman were convicted of the charge of receiving stolen property. Proceedings were subsequently suspended and appellants were granted probation.

Appellants, who were husband and wife, together with several codefendants, including one Paul Rollins,[1] were originally charged with conspiracy to commit the crimes of burglary, receiving stolen property and forgery. Also charged were several substantive counts of burglary. After the case had been partially tried upon the original information, pursuant to proper waivers, the jury was dismissed, and stipulations were entered into preserving objections previously entered and allowing the court to consider all evidence up to that time received. The court then permitted the amendment of the information to include the additional charge of receiving stolen property. Upon the motion of the People the counts charging burglary were dismissed. The court found appellants not guilty of the conspiracy charge. They appeal from the judgments (orders granting probation) entered upon their conviction of receiving stolen property, urging as their principal contention, that the evidence upon which the convictions were based, was obtained by an illegal search and seizure.

[1]Rollins successfully applied to this court for a writ of prohibition in *Rollins* v. *Superior Court*, 223 Cal.App.2d 219 [35 Cal.Rptr. 734].

It is conceded that the arresting officers had no warrant for arrest or search. The legality of the search and seizure thus depends on whether it has been established that the search was incidental to a valid arrest based on probable cause.

Police Officer Morrill testified that he worked for the Long Beach Police Department and was attached to the commercial burglary detail. He was one of the officers who arrested defendant Vera Coleman and several codefendants. The arrests took place on March 7, 1963, at a 34-unit apartment house owned by Vera and Leslie Coleman, and managed by Paul Rollins. In April 1962, Morrill had been informed by the Culver City Police Department, that five persons (unnamed), taken into custody as burglary suspects, gave the apartment building as their residence. In May 1962, three persons, Bass, Kusmich and Mosee, were arrested as burglary suspects at or in the vicinity of the apartment house. The apartment of Bass was found to contain two bags of tablets which appeared to be benzedrine. (No showing is made of the disposition of any of these cases after the initial arrest.) Also, during the month of May, one Raines was arrested, in one of the apartments of the building, and subsequently confessed to having committed 40 local burglaries.

In December 1962, Police Officer Abraham entered the investigation and worked with Morrill in an undercover capacity. Abraham's part in the investigation lasted approximately three weeks, during which time he spent from one to four hours at the apartment house. Abraham initially went there with one Phillips, a special employee of the police department (not shown to be reliable), and, using police funds, rented a room for Phillips.

Morrill testified that he received a report from Officer Abraham which recounted what the latter saw and heard over the three-week period of his surveillance. The report contained the following observations: Three new transistor radios were seen in the manager's (Rollins) apartment; two of these radios were later taken to apartments of tenants; a large bundle of clothing was moved from the manager's apartment to a rear apartment; three television sets were moved to different locations; one tenant, called "Larry," told Abraham that Rollins was an ex-con and that Rollins was teaching him how to "boost"; Abraham overheard Rollins tell an unidentified person "I don't have any pills right now, but if I had some I would sell them to you. In fact, I would sell them to anybody, even a cop. It's only a misdemeanor"; several tenants told Abraham that "Larry" had "pills" for sale; one

Kusmich who was not a tenant, was observed carrying four new Remington razors to apartment 4; Kusmich was friendly with Rollins and Vera Coleman.

Morrill further testified that Phillips personally told him that, on one occasion, Rollins had said he might be able to use Phillips to ''pull'' a ''rooftop job.''

Officer Abraham also testified on the issue of probable cause. When he first went to the apartment house with Phillips, Vera Coleman rented Phillips an apartment. At that time she brought out a Kodak camera and offered to sell it to Abraham for $85 cash, or on terms with a small down payment. She said it was worth $200 and was practically brand new. Abraham did not buy the camera. Approximately two weeks later he purchased a Remington razor from Rollins for $15. He overheard a tenant in the building, Ross Monroe Ferguson, attempt to sell Phillips a camera for $65. Ferguson made it apparent that the camera was worth more than what he was asking.

On February 28, 1963, Officer Morrill interviewed Paul Ferguson in the local misdemeanor jail. Ferguson told him that he had been living in the apartment house with his brother Ross Monroe Ferguson; that Rollins was active in receiving stolen articles and had shoplifters and burglars working for him; all the stolen articles were channeled through his apartment which was Apartment B; in December 1962, members of a group living in the apartment house had committed the burglary of a dress shop located nearby; he had entered into negotiations with Rollins to dispose of the clothing taken from this dress shop, but before they could reach an agreement, he had gone to the Hollywood area to do some shoplifting during the Christmas season.

Paul Ferguson also told Officer Morrill that stolen goods were, while being held, transferred from the apartment house to a ''drop'' in the San Fernando Valley. The ''drop'' was a business, owned by Leslie Coleman, which was engaged in cleaning airplane and missile parts. He thought there might possibly be some stolen radios and drill motors there at that time.

On March 7, 1963 (the date of the arrests), at approximately 4 a.m., Officer Morrill talked to Hersell Painter who had been taken into custody a short time before. Painter told Morrill that 22 pairs of ladies' hose, which he had in his possession when arrested, were given to him by Paul Rollins, with instructions to deliver them to a man named Jim at a

local bar. Jim, however, had not shown up, and he was on his way back to Rollins' apartment when taken into custody. Painter also told the officer that, besides stolen property, Rollins was also dealing in "pills"; that at that time Rollins had from three to seven jars of "bennies" in a storeroom adjacent to his apartment; that there were also a number of rolled pills in a seashell by the swimming pool. Painter also said that, in an upper west storeroom of the apartment building, there were a number of stolen power tools.

Just prior to the time of the arrests Painter was sent into the apartment building. He returned with a sack of benzedrine pills.

At approximately 8 a.m., Officer Morrill, accompanied by several other officers, entered the apartment building. They went first to Rollins' apartment (Apartment B), arrested Rollins, and then entered his apartment. When asked if he had a key to the storeroom which was located adjacent to his apartment, Rollins, after first disclaiming any knowledge of the storeroom, stated he had no key to the room. He stated that he was only the manager and that the responsibility for the storerooms was with the owners, "Mr. and Mrs. Coleman or Mrs. Coleman." The officers then proceeded to Mrs. Coleman's apartment (Apartment 1), and she was placed under arrest. The officers then took Mrs. Coleman to the storeroom adjacent to Apartment B and she opened the door to the room. After searching the storeroom they returned to Apartment 1. Mrs. Coleman was asked if the officers could look around in her apartment, and she replied, she did not mind. A search was then made of the apartment. The officers found a fur stole in a polyethylene bag with a tag "Bullock's Santa Ana" (People's Exhibit No. 4), and two men's suits (People's 5). The officers also observed a Motorola television (People's 1) and a typewriter (People's 3), in the apartment. They returned with a warrant on March 25 and seized the latter items.

On March 7, but subsequent to the time of the raid on the apartment building, appellant Leslie Coleman was arrested at his business establishment located in North Hollywood. A camera (People's 2) was found in his vault.

These five exhibits constituted the property appellants were charged with unlawfully receiving. It was stipulated at the trial that the articles were stolen. It was further stipulated that all of the People's exhibits were seized as a result of the search of the Coleman's apartment building on March 7, or as the result of clues obtained during that search.

The decisive issue presented in this appeal is whether the officers had probable cause to arrest Vera Coleman. If they did, then the subsequent search of the Coleman's apartment which turned up the incriminating evidence and which led to the arrest of Leslie Coleman and the search of his business office, was proper as incidental thereto, and without regard to whether Mrs. Coleman consented to the search. If, however, the arrest was without probable cause, any consent to the search thereafter given, may not be relied on because, ''A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom.'' (*People* v. *Haven*, 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].)

■ An arrest without a warrant is justified if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. (*People* v. *Privett*, 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) ■ ''Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty. . . . [Citations.]'' (*People* v. *Ingle*, 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ Reasonable or probable cause is determined by the factual situation presented or apparent to the arresting officer at the time he is required to act. (*People* v. *Ingle, supra*, 53 Cal.2d 407, 414.) ■ And, '' 'Although information provided by an anonymous informer is relevant to the issue of reasonable cause, in the absence of some pressing emergency [citing a case], an arrest may not be based solely on such information [citing several cases], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable.' '' (*People* v. *Reeves*, 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393].)

■ Although the information secured in the instant case from the several untested sources, as corroborated by the reliable information which the officers gathered, and by their personal observation at the apartment building, was arguably sufficient to support a finding that the officers had reasonable cause to arrest Paul Rollins,[2] we find no such circumstances

---

[2]It should be noted that the evidence bearing on probable cause contained in the record of this case is more extensive than that contained in the transcript of the preliminary examination in Rollins' case as reviewed by this court in *People* v. *Rollins, supra*, 223 Cal.App.2d 219.

to support the finding that the officers were justified in arresting appellants. From the nearly yearlong investigation leading up to the arrests, the only evidence which we can glean from the record in this case which in any way connects the Colemans to any illegal activity, was the following: Vera Coleman was observed to be "friendly" with a person (who was not charged with any crime), seen carrying four electric razors into one of the apartment units; she attempted to sell one of the officers a camera at a price substantially under what she considered to be its actual value; an untested informant told the officers that Leslie Coleman's business establishment was being used as a "drop" for stolen articles; and, the appellants were the owners of and lived in the 34-unit apartment house, managed by a person (Rollins), who was suspected to be the head of a local burglary ring and a seller of benzedrine. We cannot say from the evidence presented that the arresting officers, on the basis of this information, could reasonably believe that appellants had committed any crime. We must therefore conclude that the prosecution has not carried the required burden of showing proper justification for the warrantless search that turned up the evidence upon which appellants' convictions were based. (*People* v. *Haven, supra,* 59 Cal.2d 713, 717.) Accordingly, the judgments cannot stand. In so holding we need not discuss two further contentions raised by appellants.

The judgments of conviction are reversed.

Files, P. J., and Kingsley, J., concurred.