[Crim. No. 2899.   Fourth Dist., Div. One.   Sept. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD LEE ERICKSON, Defendant and Appellant.

Harry Ellman and Melvyn B. Stein for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Bechefsky, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J. — Defendant appeals from a judgment sentencing him to concurrent terms for two violations of the penal provisions of the Health and Safety Code. He was convicted of possession of marijuana for sale on September 12, 1966, and of selling marijuana on September 14, 1966.

A San Diego police officer, Gogin, working as an undercover agent, became acquainted on August 19, 1966, at the San Diego police headquarters with one Henry LeRoy Henson who at that time resided at 4500 T Street in San Diego but who no longer resided there at the time of trial and whose whereabouts at that time was unknown to Gogin.

Henson introduced Gogin to one Patrick Duke Johnson and on September 12, 1966, Gogin was present at a gathering at 725 Portsmouth Court in the City of San Diego, Johnson and one Stephen Robert Donnelly also being present at that time and place. At about 11:05 p.m. there was a knock at the kitchen door; Johnson went to the door, opened it and admitted the defendant, Richard Lee Erickson. Johnson then came into the living room where the two other men were, had a conversation with them, returned to the kitchen and went outside with defendant; Gogin went through the kitchen to the outside and saw defendant standing along the right-hand side of a Volkswagen bus, both of whose doors were open; Gogin saw defendant hand a parcel to Johnson which Johnson brought into the kitchen and placed on the kitchen table; the parcel was opened and contained two objects the size and shape of construction bricks; Johnson handed one of the bricks to Gogin in exchange for $90; it was composed of marijuana and weighed approximately one kilogram; Johnson delivered the other brick to Donnelly in exchange for a second sum of $90.

On the next evening, September 13, Gogin was again at 725 Portsmouth Court; also present were Henson, defendant and three other persons; Gogin had a conversation with defendant on that occasion in which they discussed the availability of marijuana from across the border; defendant told Gogin that there were only two means of being caught; one was in the actual smuggling at the border and the other was in making a

direct sale to an undercover agent; that he, defendant, would never make a sale to an undercover agent and that he was too "cool" to be caught.

In Gogin's contact with Johnson on September 12 he had told Johnson that he wanted more than one kilogram of marijuana and Johnson had made an appointment with Gogin to be at the Portsmouth Court address on September 14, where the two men met at about 6 p.m. and where defendant also was present. There was a discussion as to how long it would take Gogin to get the money for two kilograms of marijuana and how long it would take defendant to obtain the "weed"; an appointment was made for 10:30 p.m. at Henry's, a drive-in restaurant in the vicinity. Defendant drove away in the same Volkswagen bus. Gogin arranged to give Johnson a ride to the place of rendezvous at the appointed time, which he did; they were shortly joined by defendant who came to Henry's in the Volkswagen bus. Defendant declared his unwillingness to make a delivery direct to Gogin, but said he would make it to Johnson with whom he was acquainted; Gogin expressed unwillingness to part with $180, the agreed price for two kilograms of marijuana, but finally paid that to defendant and took Johnson's wallet and its contents as security after defendant had refused to give his own wallet as security; defendant then drove off accompanied by Johnson. Gogin, after an interval, went to 715 San Fernando Place, from which he saw defendant drive away in the Volkswagen bus and where he met Johnson who there delivered to him two kilograms of marijuana.

## DEFENDANT'S CONTENTIONS

Defendant makes the following contentions:

1. There was an unlawful search and seizure because the reliability of the informant was not established.

2. Disparagement of counsel for defendant and bias of the court constituted reversible error.

3. The misconduct of the prosecutor in his closing statement to the jury constituted reversible error.

## DEFENDANT'S FIRST CONTENTION

The informant mentioned by defendant was Henson. It is immediately apparent that under the evidence Henson was not a witness to or a party to either of the transactions in connection with which defendant was found guilty. Henson's only connection was that of one who introduced Gogin to Johnson and as having been present on the evening of

September 13 when Gogin had his first conversation with defendant. The testimony is that it was Johnson who introduced Gogin to defendant.

It is difficult if not impossible to understand the logic of this particular contention of the defendant. There was no unlawful search nor any search or seizure shown by the testimony; the marijuana that came into the possession of Gogin came as the result of voluntary acts on the part of Johnson and defendant. The following cases cited by defendant seem to be little apropos: *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528]; *People* v. *Robinson,* 166 Cal.App.2d 416 [333 P.2d 120]; *People* v. *Cedeno,* 218 Cal.App.2d 213 [32 Cal.Rptr. 246]; *People* v. *Amos,* 181 Cal.App.2d 506 [5 Cal.Rptr. 451]; *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Reeves,* 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Varnum,* 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772]; *People* v. *Gardner,* 252 Cal.App.2d 320 [60 Cal.Rptr. 321]; *People* v. *Coleman,* 235 Cal.App.2d 612 [45 Cal.Rptr. 542].

Neither arrest nor search nor seizure was made upon the basis of any information furnished by Henson.

### DEFENDANT'S SECOND CONTENTION

Arising out of defendant's prepossession that Henson was a person whose testimony would be of value or was necessary, defendant had a subpoena issued for Henson's presence, which it appears had been placed in the hands of a process server who was unable to serve it. Defendant had the process server sworn as a witness and it may be assumed would have had the process server relate all the places he had visited in his fruitless efforts to serve the subpoena. At that point the following colloquy took place:

"THE COURT: I am not going to permit this witness to get up here and relate a lot of irrelevant matter about where he went and why he went there and who told him what. It has nothing to do with the issues in this lawsuit and I won't permit it.

"MR. ELLMAN: All right, of course I respect your Honor's ruling, but I want to show your Honor that here they claim that this witness was a reliable informant upon which all of this case—

"THE COURT: You can argue the case to the jury later, Mr. Ellman, you are not going to be permitted to manufacture and present irrelevant evidence. Now that is it.

"Mr. Ellman: Your Honor, I am not manufacturing any evidence, sir, I mean, I am trying—

"The Court: I don't mean it in that sense, but the Court, the District Attorney has made a statement in open court offering you the stipulation to the effect that they never had the address and they couldn't give you the information."[1]

Defendant asserts without reasonable cause to do so that the court was charging defense counsel with the manufacture of false evidence, when in fact the court was objecting to the creation of irrelevant evidence about the unsuccessful attempts of the process server to serve a witness, the necessity for whose presence was premised upon a wholly erroneous conception.

The second assignment of prejudicial misconduct against the trial court arose when defendant sought to show that Gogin in his testimony before the grand jury had been asked the following question and had given the following answer:

" 'I show you' this is the District Attorney's question— 'I show you Grand Jury Exhibit No. 4 and ask you if this is the two kilos that you took delivery of and for which you had given $180 State funds to Erickson and Johnson?'

" . . . . . . . . . .

" 'Yes, this is it, these are the kilos.' "

The purpose of the question was to impeach Gogin in his testimony at the trial, that he had paid $180 to defendant direct.

Objection was made by the district attorney upon the ground that the question had been asked of the witness previously. These observations were made by the court, with interjection by counsel for defendant:

"The Court: I don't know whether it has, but if so, it doesn't mean anything, the witness, the answer, which is the evidence, says, " 'Yes, this is it, these are the kilos,' and I instruct the jury now that the question of counsel now or in the—before the Grand Jury is not evidence and they are so instructed, only inasmuch as it throws light upon the answer. That is the law, the question of counsel is not evidence, Mr. Ellman, you know that.

"Mr. Ellman: Well now, just a minute, your Honor, I am—this man here is the main witness for the prosecution.

[1]Since "manufacture" may have, although not as its first or usual, meaning, "to invent fictitiously," it may have been an unhappy choice of words.

"The Court: That is all right, but that doesn't give you the right to vary the rules of evidence.

"Mr. Ellman: I am not trying to vary the rules of evidence, I want to see if I can impeach this man. I have every right in the world to do it.

"The Court: Go ahead."

The witness in fact was asked and did answer the question concerning his testimony before the grand jury; he had also on prior cross-examination been asked and admitted that he gave the following testimony before the grand jury: " 'So, in return I held, I gave them $180 of the State funds and I kept Patrick Duke Johnson's wallet which contained approximately $60, his driver's license and all of his identification as security.' "

Apparently the difference between court and counsel was with regard to the effect of the answer given by the witness before the grand jury.

It cannot reasonably be said that any prejudice resulted to defendant because of this exchange between court and counsel.

■ The third alleged instance of judicial misconduct occurred when Dr. Eggertsen, a psychiatric witness called by defendant, was asked on cross-examination whether defendant could tell right from wrong. Defense counsel objected to the question on the ground that he was not contending along those lines. The court made this observation:

"The Court: What do you mean, you are not contending along those lines? I mean, as I infer, you don't contend that he is an insane person or an idiot nor a lunatic?

"Mr. Ellman: That's right.

"The Court: All right, sustained."

As stated by counsel for defendant, there was no plea of not guilty by reason of insanity. Defendant's medical witness did however testify that defendant, in the witness' opinion, was capable of doing unconscious acts. As it developed in the instructions, the court gave elaborate and detailed instructions on the subject of unconscious conduct as a defense. A customary instruction was given which included the language that "All persons are of sound mind who are neither idiots nor lunatics nor affected with insanity."

Use of that particular language by the court in his discussions with counsel can hardly be said to be prejudicial.

## DEFENDANT'S THIRD CONTENTION

Defendant did not testify in his own behalf. In his closing argument to the jury, the prosecutor made this observation: "So then in view of the fact that that testimony [by Officer Gogin, regarding his purchase of marijuana] is uncontroverted and uncontradicted, we get down to the testimony of Dr. Eggertsen."

Defendant argues that this remark violates the rule of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]; *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; and *People* v. *Stout,* 66 Cal.2d 184 [57 Cal.Rptr. 152, 424 P.2d 704]. We do not conceive that any of the rules with regard to the constitutional right of a defendant not to be a witness against himself requires that the prosecutor abstain from stating that certain testimony has not been testimonially controverted. In the case, for instance. of a defendant who claims entrapment, as defendant in this case did, the defendant himself might testify as a witness without denying the actual making of the sale. Had this defendant done so, it would certainly not have been improper for the prosecutor to point out that the making of the sale was not in fact denied. It is true, further. that someone other than defendant might have denied the matters testified to by Gogin if Gogin's testimony were untrue. Johnson would have been such possible witness.

In sum, a comment by the prosecution that certain testimony describing criminal conduct of a defendant has not been denied is not, in itself, a comment on a defendant's failure to testify within the constitutional inhibition of the Fifth Amendment.

Defendant makes for the first time in his closing brief additional claim that the prosecutor was guilty of prejudicial misconduct in the following statement: " 'The first witness testified that on two occasions this defendant was participating in the sale of marijuana, and our witnesses' testimony has been uncontroverted and uncontradicted. *There is no reason to disbelieve our witness. Their pay is the same every month no matter how this case comes out. They are only interested in doing their job and making some attempt to see that this problem is brought to a stop, or at least partially in this area.*' (Italics added.) "

There is no evidence whether a police officer's pay is the same every month no matter how a particular case on trial might come out. That remark and the immediately following

sentence might better have been omitted by the prosecutor. However, no assignment of misconduct was made at the time, nor was any request made to the court to instruct the jury to disregard counsel's remarks. The jury had previously been advised by the court that the remarks of counsel should never be confused with the evidence and were not evidence, and the jury was so instructed thereafter. It is possible to say that beyond a reasonable doubt the alleged misconduct could not have contributed to the finding of guilt.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 8, 1967.