[Civ. No. 12284. Third Dist. Aug. 14, 1969.]

WAYNE ALBERT ROADS, Petitioner, v. THE SUPERIOR COURT OF SISKIYOU COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Rutherford & Rutherford, James V. Jones, Sheldon Rutherford and David Kelly for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Daniel J. Kremer and Peter G. DeMauro, Deputy Attorneys General, for Real Party in Interest.

JANES, J.—Petitioner was indicted by the grand jury on charges of murder (Pen. Code, § 187), possession of narcotics (Health & Saf. Code, § 11500), and possession of narcotics paraphernalia (Health & Saf. Code, § 11555). A motion to set aside the indictment on all counts was made pursuant to Penal Code section 995. Petitioner urged the lack of reasonable or probable cause to support the murder charge and illegal search and seizure in regard to the narcotics charges. The superior court denied the section 995 motion and granted a motion severing further proceedings on the homicide charge from those on the narcotics charges.

A petition for writ of prohibition, based on the grounds previously presented in the superior court, was filed April 21, 1969. On April 24, 1969, we issued an order to show cause limited to the murder count. Upon review of the evidence we have concluded that petitioner's contention must be sustained.

At approximately 8-8:30 p.m. on March 1, 1969, 16-year-old Johnny Applegate ("Johnny"), younger brother of the victim, Bruce Applegate ("Bruce"), went to petitioner's home at Happy Camp to invite petitioner's roommate, Robert Braddy, age 20, to a party that evening. Johnny was accompanied by Linda Martin. A party was in progress at petitioner's home. Those present were petitioner, Braddy, Lois Darlene Berry ("Darlene"), age 15, Sharon Blacketer ("Sharon"), and Sharon's brother, Charles Blacketer, age 14. When Johnny knocked on the door and asked to be admitted, he was told by those inside to go away, that it was a "private party." As he was leaving, Johnny told petitioner to "shove it." An altercation between Johnny and petitioner followed. Johnny testified that petitioner struck the first blow, and that his (Johnny's) shirt was torn and his ear and back scratched. Braddy testified that the first physical contact was by Johnny, and that no one was hurt in the fight, although petitioner's ear was scraped. Darlene and Sharon also testified that no one was hurt. Braddy and Darlene contradicted Johnny's statement that his clothing was torn. Johnny testified that he thought petitioner was drunk because "[He] wouldn't do something like that if he was sober." Sharon was the only witness to the fight who was asked about the sobriety of the participants. She testified that petitioner was sober but that Johnny appeared to be drunk. It is uncontradicted that before he left, Johnny told petitioner that he would be back. Johnny answered, "yes" when asked by petitioner if he'd be alone.

After Johnny left, petitioner went into his bedroom and loaded a .22 caliber pistol which he left there, telling the others there might be trouble later. He also placed a sign on the door which read "private party." Those present ate some pizza and a small quantity of beer was consumed by the guests (except Charlie) as the party continued in the dimly lit house. All those at the party testified that petitioner was not drunk and had not used any drugs that night.

At approximately 11 p.m. that night, David Burcell was eating dinner at the Timber Inn Cafe in Happy Camp when Bruce approached him and told him that his brother Johnny had been beaten up by petitioner and asked Burcell if he could show him where petitioner lived. Burcell, Bruce, and Frank Wood left the cafe and went to petitioner's home. Burcell and Wood testified that Bruce commented on the sign and then knocked on the door several times. There was no

response, although the house was dimly lit and music could be heard. Bruce then forced the door with his shoulder and went in. His companions testified that they remained outside. Sharon and Charlie testified that both came in. Darlene testified that only Wood came in. Several seconds later a shot was heard by Wood, and both observed Bruce come out and say, "I'm shot." The three men started to run down the street, but Bruce stopped and lay on the sidewalk. Three more shots were heard. Bruce, larger in build than petitioner, was found to be unarmed when examined by Officer Collord.

Those present inside the house (with the exception of petitioner, who did not appear before the grand jury) testified that Bruce forced his way in and moved towards petitioner. Darlene testified that Bruce appeared to be drunk, and that she had previously observed him in a drunken condition. (No other witness was questioned regarding Bruce's condition.) Their testimony in regard to the shooting is without material conflict: Petitioner got his gun from the bedroom and twice told Bruce to get out of his house or he would shoot. Bruce said nothing but kept backing petitioner up. As he either lunged towards or attempted to strike petitioner, the gun was fired (or "went off"). Bruce then ran out, crying out, "I'm shot." Petitioner went to the door and fired three shots to attract a passing policeman.

Several police officers arrived shortly and took petitioner, Braddy, and petitioner's father, who lived nearby, to the police station. Petitioner was advised of his rights at the police station and there was heard to say to his father, "he [decedent] came through the door and I shot him."

No testimony was presented as to the cause of death, nor was any medical testimony presented as to the fact of death. Deputy Turner, testified, however, that he checked Bruce and could not find any sign of life. Undersheriff Rokes said Bruce was not alive when he saw him at 2 a.m., and that a cursory examination of Bruce's body revealed "A puncture-type gun wound in the chest of the subject."[1]

Petitioner contends that he was indicted without reasonable or probable cause (Pen. Code, § 995) in that the prosecution failed to produce any evidence showing "malice afore-

---

[1]Evidence that the victim had been a healthy man before receiving a bullet wound which went through his body in the heart area, and that he became lifeless almost immediately thereafter, has been held sufficient to establish the corpus delicti of homicide. (*People* v. *Wood* (1905) 145 Cal. 659, 661 [79 P. 367].)

thought" at the grand jury hearing, and that the evidence which was produced established that the killing which occurred was justifiable homicide. (Pen. Code, § 197.)[2]

■ Although the Legislature has lodged exclusively with the grand jury, and not the courts, the duty to determine whether or not an indictment should be returned (Pen. Code, § 939.8), an indictment must be set aside by the court ". . . [when] the defendant has been indicted without reasonable or probable cause." (Pen. Code, § 995.) ■ " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused . . . [and] . . . may exist although there may be some room for doubt." (*People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344].) ■ Such cause exists "if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged." (*People* v. *Mitchell* (1946) 27 Cal.2d 678, 681 [166 P.2d 10].)

■ "An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Bompensiero* v. *Superior Court* (1955) 44 Cal.2d 178, 183-184 [281 P.2d 250].) The "offense" referred to is not merely *any* offense, but *the offense charged by the indictment*. (*Rollins* v. *Superior Court* (1963) 223 Cal.App.2d 219, 223 [35 Cal.Rptr. 734]; *Callan* v. *Superior Court* (1962) 204 Cal.App.2d 652, 662 [22 Cal.Rptr. 508]; see also dictum in *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 528 [42 Cal.Rptr. 838, 399 P.2d 374] (rule equally applicable where uncontradicted evidence of "included" offenses).) ■ It has been held, therefore, that "where there is absolutely no competent evidence before the grand jury of the commission by the accused of *the crime charged* (*Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 322 [121 P.2d 713]) or where there is a total absence of evidence supporting *a necessary element* of the crime charged, the indictment will be held invalid upon proceedings for a writ of prohibition. (Citations.)" [Italics added.] (*Callan* v. *Superior Court, supra,* 204 Cal.App.2d at p. 662.)

---

[2]Petitioner fails to note that the evidence may be construed to support a charge of manslaughter on the theory that some of the ingredients necessary to excuse the act as a justifiable homicide may not have been accepted by the grand jury. (*People* v. *Lewis* (1960) 186 Cal.App.2d 585, 598 [9 Cal.Rptr. 263].)

On the question whether malice aforethought, an essential element of the crime of murder, is lacking in the evidence presented to the grand jury and now before us, both parties rely heavily on *Jackson* v. *Superior Court, supra,* 62 Cal.2d 521. In *Jackson* a similar contention was presented, but the evidence there before the grand jury which supported petitioner's theory of provocation and/or self-defense was found to be ". . . neither uncontradicted nor susceptible of only one interpretation." (P. 528.) In rejecting petitioner's contention and denying prohibition the court stated, at pages 525 to 527: "From the foregoing evidence the grand jury could reasonably entertain, as men of ordinary caution and prudence, a strong suspicion that petitioner shot and killed Harry Cole on the night in question. Indeed, petitioner apparently concedes this to be the fact, but argues that an indictment for murder nevertheless cannot stand because 'There was no evidence before the grand jury that the homicide was committed with malice aforethought.' By statutory definition (Pen. Code, § 187) such malice 'is made an essential element of the crime of murder whether it be of the first degree or of the *second* degree.' (*People* v. *Bender* (1945) 27 Cal.2d 164, 180 [163 P.2d 8].) To sustain a conviction of either degree of murder, therefore, it must be proved at the trial that the homicide was committed by the accused with the state of mind known in the law as 'malice aforethought.' But it does not follow that the same showing must be made before the grand jury to support a mere accusation of murder.

"To begin with, even at trial the necessary element of malice may be inferred from the circumstances of the homicide. Penal Code section 188 declares that 'Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. *It is implied, when no considerable provocation appears,* or when the circumstances attending the killing show an abandoned and malignant heart.' (Italics added.) From the emphasized language the rule is derived that 'When the killing is proved to have been committed by the defendant, and nothing further is shown, *the presumption of law is that it was malicious and an act of murder*; but in such a case the verdict should be murder of the second degree, and not murder of the first degree.' (Italics added.) (Citations.) A further refinement of that rule has been developed in cases where the homicide results from an assault with a deadly weapon : 'When it is proved that defendant assaulted dece-

dent with a dangerous weapon in a manner endangering life and resulting in death and the jury concludes that the evidence did not create in their minds a reasonable doubt whether defendant's act may have been justified or its criminal character mitigated by the influence of passion (e.g., of terror, *People* v. *Logan*, 175 Cal. 45, 48, 49 [164 P. 1121]) then no further proof of malice or of intent to kill is required to support a verdict of guilty of second degree murder. Of that crime an actual intent to kill is not a necessary component and malice is implied from such assault in the absence of justifying or mitigating circumstances.' (Citations.) . . .

''. . . . . . . . . . . . . ''

"It follows that to require the prosecution, as petitioner urges, to present specific proof of 'malice aforethought' at the grand jury hearing. over and above its fundamental showing of the killing of the victim by the defendant, would in effect place a greater burden on the prosecution at the accusatory stage than at the trial itself. None of petitioner's arguments compels us to reach such an anomalous result. First, petitioner invokes those cases where an indictment or information has been set aside because of a total lack of evidence before the grand jury or magistrate of one of the necessary elements of the crime charged. (Citations.) But in no case so holding was the missing element one which, as here, arose by implication of law from the nature of the criminal act itself. By contrast, accusations of murder have been upheld in a number of cases without specific evidence of malice, upon a showing of the fact of the homicide and the accused's participation in it." *Jackson* v. *Superior Court, supra,* 62 Cal.2d at pp. 525-527.)

The court in *Jackson* did recognize, however, the possibility of a case in which these rules would not compel the denial of relief. At page 528. the court states: "Petitioner's second argument is that malice cannot be implied in this case because the evidence before the grand jury assertedly establishes *as a matter of law* either justifiable killing in self-defense or at least provocation adequate to reduce the crime to voluntary manslaughter. (Pen. Code, §§ 192, 197.) *As an abstract proposition, it is of course conceivable that a case of homicide could be presented to the grand jury in which evidence of adequate provocation or self-defense were both uncontradicted and sufficient as a matter of law; in that event it could reasonably be contended that an indictment for murder would be in excess of the grand jury's power.* But this is not such a case.

Here petitioner's theory is that the killing was 'provoked by the decedent's persistent and clearly-demonstrated determination to commit a sexual assault' upon her, and she naturally emphasizes those aspects of the evidence which support her theory. That evidence, however, is neither uncontradicted nor susceptible of only one interpretation." [Italics added.]

The "abstract proposition" referred to by the Supreme Court in *Jackson, supra,* at page 528, materialized in the recent case of *People* v. *Garcia* (1968) 265 Cal.App.2d 94 [71 Cal.Rptr. 102], hearing denied October 17, 1968. In *Garcia,* the Court of Appeal for the Second District, Division Four, affirmed an order setting aside an information which charged defendant with murder, where the uncontradicted evidence presented to the magistrate showed that the defendant fired the fatal shot through the door of his home when the victim, King, carrying a weapon in an overnight case, provoked a fight and attempted to forcefully enter. Appellant in that case sought to draw from the evidence those facts which would support an inference of malice. The court commented upon appellant's argument as follows: ". . . To support their view of the evidence. the People point out that Garcia didn't call the police, that Garcia borrowed a rifle a few weeks before the homicide, that Garcia never actually saw King remove a weapon, that Sylvia testified that after hearing the rattling at the door, it was quiet, and that Garcia testified that after the rattling noise King hit the door with his body several times.

"The People also argue that ' ''When the killing is proved to have been committed by the defendant, and nothing further is shown, *the presumption of law is that it was malicious* and an act of murder; . . .'' ' (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374].) However, the case before us is not a case where nothing further is shown. There is Garcia's testimony relating to self-defense, which is corroborated by Sylvia's testimony. Further, an overnight bag with a gun in it was found by the decedent's body. There was more than sufficient evidence in the case at bench to overcome the presumption referred to in the *Jackson* case.

"The People also argue that in *People* v. *James* (1950) 99 Cal.App.2d 476 [222 P.2d 117], and *Jackson* v. *Superior Court, supra,* 62 Cal.2d 521, the evidence of provocation or self-defense was insufficient. These cases do not aid the Peo-

ple. Each case must turn on its own facts, and the factual situation in the case before us is dissimilar to the factual situations in the cases cited by the People." (265 Cal.App. 2d, *supra*, at p. 97.)

A factual summary similar to that made in *Garcia* is presented to us by the Attorney General in support of the argument that the evidence does not establish justifiable homicide as a matter of law, in that it fails to show that the circumstances were such as "to excite the fears of a reasonable person" and that petitioner "acted under the influence of such fears alone." (Pen. Code, § 198.) This argument concludes with the following statement. "Further since the petitioner apparently began the physical fracas which ended with the death of the victim, he cannot justify the killing in his own home, since he was not wholly without fault in bringing the necessity upon himself. (Citations.)"

The cases cited by the Attorney General in support of his position, although stating the rule that an aggressor who has not sufficiently withdrawn from the fray cannot assert self-defense as an excuse for the killing of another, are otherwise inapposite in the extreme.

■ It has long been the rule that one may stand his ground and resort to the use of deadly force to repel an intruder in his home when it reasonably appears that such intruder intends to inflict serious bodily harm. (*People* v. *Walsh* (1872) 43 Cal. 447; *People* v. *Lewis* (1897) 117 Cal. 186 [48 P. 1088, 59 Am.St.Rep. 167]; *People* v. *Reese* (1944) 65 Cal.App.2d 329, 338-345 [150 P.2d 571]; *People* v. *Hubbard* (1923) 64 Cal.App. 27, 35-36 [220 P. 315].) ■ The right to defend one's habitation has been held redundant where the right to defend one's self appears. (*People* v. *Smith* (1967) 249 Cal.App.2d 395, 402 [57 Cal.Rptr. 508].) And it is the apparent danger which provides the justification, not the existence of actual danger. (*People* v. *Miles* (1880) 55 Cal. 207, 209-210; *People* v. *Collins* (1961) 189 Cal. App.2d 575, 588 [11 Cal.Rptr. 504].)

". . . In order that a person avail himself of his right of self-defense, it is sufficient that appearances on the part of his assailant were such as to arouse in his mind, as a reasonable man, that his assailant was about to commit a felony. He may act upon such appearances with safety; and if without fault or carelessness he is misled concerning them, and defends himself correctly according to what he supposes the facts to be, his act is justifiable, though the facts were in truth other-

wise, and though he was mistaken in his judgment as to such actual necessity at such time and really had no occasion for the use of extreme measures. (*People* v. *Thomson,* 145 Cal. 717, 721 [79 P. 435]; *People* v. *Hatchett, supra,* 63 Cal.App.2d 144, 156-157 [146 P.2d 469].) A person who without fault on his part is exposed to a sudden felonious attack need not retreat. In the exercise of his right of self-defense he may stand his ground and defend himself by the use of all force and means apparently necessary and which would appear to be necessary to a reasonable person in the same situation and with the same knowledge; . . ." (*People* v. *Collins, supra,* 189 Cal.App.2d at p. 588.)

That there are distinguishing features between *Garcia* and the instant case is pointed out by petitioner in his brief.[3] However, the factual situations are sufficiently similar to compel the same result. One of the distinctions works significantly in petitioner's favor: The only witness to the killing in *Garcia* was the girl with whom the defendant was living; in our case there were multiple witnesses, all of whom related virtually identical versions of the incident.

The evidence before the grand jury in the instant case and presently before us does not present such a state of facts as would lead an ordinarily cautious and prudent person to conscientiously entertain a strong suspicion that the defendant is guilty of the offense charged against him. "A person has a right to be free from prosecution for a crime unless there is some valid ground for assuming the possibility that he is guilty." (*People* v. *Garcia, supra,* 265 Cal.App.2d at p. 98; *Greenberg* v. *Superior Court, supra,* 19 Cal.2d 319, 322; *Jensen* v. *Superior Court* (1950) 96 Cal.App.2d 112, 118 [214 P.2d 828].)

Let the peremptory writ of prohibition issue as prayed.

Pierce, P. J., and Friedman, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 9, 1969.

---

[3]The provocations in *Garcia* which culminated in King's death had been brewing for over a month, the evidence in the instant case indicates spontaneity. The victim in *Garcia* was found to have had a weapon in his bag, Bruce Applegate was found to have been unarmed. Garcia's victim can be viewed as a suitor for the favors of Garcia's woman, no such emotional factor is present in the instant case.